**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **APRIL CADENA,** | § | |
| *Plaintiff* | § | |
| | § | **EP-16-CV-00209-FM-RFC** |
| **-vs-** | § | |
| | § | |
| **EL PASO COUNTY, CORIZON HEALTH,** | § | |
| **INC., DR. ALEX SALAZAR,** | § | |
| *Defendants* | § | |
| | § | |

<u>**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**</u>

On this day, the Court considered the Motion for Summary Judgment ("motion") filed by Defendant El Paso County ("County"). Having considered the motion, the evidence submitted, and the applicable law, it is the recommendation of this Court that the motion should be **GRANTED** in part and **DENIED** in part.

### PROCEDURAL HISTORY

Cadena filed her complaint on June 21, 2016, against Dr. John Alejandro "Alex" Salazar ("Dr. Salazar"), Corizon Health Inc. ("Corizon"), and the County (together "Defendants"). (Doc. 1). Cadena asserts that the Defendants discriminated against her because of her disability and acted with deliberate indifference to her medical needs in violation of her First, Eighth, and Fourteenth Amendments rights. Accordingly, Cadena brought suit against the County under the American with Disabilities Act ("ADA") and 42 U.S.C. § 1983. *Id.* Defendants Corizon and Dr. Salazar filed their separate motion for summary judgment on August 25, 2017. (Doc. 37).[1] Subsequently, the County filed its own motion for summary judgment on October 13, 2017

---

[1] In the County's motion for summary judgment, the County joins Corizon and Salazar's motion for summary judgment regarding Cadena's § 1983 claims. Similarly, Cadena incorporates her responses against Corizon and Salazar's motion for summary judgment in this motion.

(Doc. 62),[2] Cadena filed a response on November 20, 2017 (Doc. 67), and the County filed a reply on November 27, 2017. (Doc. 70). Lastly, Cadena filed her final response on December 2, 2017 (Doc. 71), and the County filed its final reply on December 8, 2017. (Doc. 72).

## CADENA'S CLAIMS

Cadena asserts claims against the County pursuant to the ADA and claims pursuant to 42 U.S.C. § 1983 for violations of her First, Eighth, and Fourteenth Amendment rights. (Doc. 1:26-38).

Cadena alleges that the County failed to provide her with reasonable accommodations or modifications and intentionally discriminated against her because of her disability in violation of the ADA.

Cadena also alleges that the County, through the actions of Dr. Salazar and other jail officials, was deliberately indifferent to her serious medical needs by (1) assigning Licensed Vocational Nurses ("LVNs") to perform the intake receiving and screening processing of prisoners at the El Paso County Detention Facility ("EPCDF"); (2) denying her the use of a wheelchair and requiring her to use crutches; (3) delaying and denying treatment; and (4) denying her pain medicine after she returned from UMC. *Id*. at 33-34. Cadena alleges that these acts or omissions were the result of alleged policies, customs, practices, and conditions of confinement of the County that constitute a deliberate indifference to a substantial risk of serious harm. (Doc. 1:31, 38).

---

[2] Documents filed in this cause are referred to as (Doc. [docket entry number]:[relevant page number]). Plaintiff's and Defendants' summary judgment evidence will be referred to as ("P." or "D." respectively Ex(s)). References to evidence supplied by Corizon and Dr. Salazar, in their separate motion for summary judgment will be referred to as ("D. Ex(s). exhibit number: relevant page number") and evidence supplied by the County will be referred to as ("D. Ex(s). exhibit letter: relevant page number"). Documents used in depositions will be labeled as ("Dep. Ex. exhibit number: page number").

Finally, Cadena asserts a First Amendment claim under § 1983 that she was denied access to a jail handbook, and the jail staff failed to send her grievance letter to the Inspector General. *Id.* at 37.

Cadena alleges that the resulting mental anguish, emotional distress, ongoing pain, weakness, swelling, disfigurement, and nerve damage, prevents her from engaging in prior activities. *Id.* at 31, 38.

## FACTS OF THE CASE

The Court has reviewed the summary judgment evidence offered by the parties. Except where otherwise indicated, the following facts are undisputed.

Cadena was a pre-trial detainee at the EPCDF from June 23, 2014, through July 18, 2014. (Doc. 1:4, 23). Corizon had a contract with El Paso County in 2014 to provide medical services to inmates held at EPCDF, and Dr. Salazar was Corizon's medical director and physician for EPCDF. (P. Exs. 4-7, 25A:11-12, 28).

On June 18, 2014, April Cadena broke her leg from unclear circumstances outside of EPCDF. (D. Ex. B: 14-15). Five days later, Cadena was found sniffing paint in a park and was arrested for an outstanding warrant. (D. Ex. I). When she was arrested, Cadena had a wheelchair, medicine, and discharge instructions from Providence Hospital ("Providence") regarding a surgery performed there on her right leg on June 22, 2014. (P. Ex. 18:23-25). At EPCDF, Nurse Stephanie Portillo, LVN, ("Nurse Portillo") performed the initial inmate intake. (P. Exs. 10, 25A:49-50, 25B). Nurse Portillo removed Cadena's boot and bandages, asked her if she could walk, and noted that she could stand independently, which Cadena did for a brief moment before sitting back down. (P. Exs. 18:28-29, 25B:Dep. Ex. 5). That same day, through telephone, Dr. Salazar ordered Norco two times a day for two weeks, follow-up with orthopedic in two weeks,

crutches, a lower bunk, wound care for the leg, and recommended that Cadena be housed in lockdown for her safety. (P. Exs. 25A:67-68, 25B:Dep. Exs. 5, 8:22). The County disputes that Cadena's wheelchair was ever taken away. (Doc. 62).

Later that day, Officers Davila and Pina took Cadena to EPCDF medical clinic, insisting that she use the crutches, catching her when she started to fall, and retrieving a wheelchair to escort her to the clinic. (P. Exs. 18:38-40, 19:58-59). At the clinic, Nurse Charlie Fuentes ("Nurse Fuentes") told Cadena there was no space on the floor for an inmate in a wheelchair but that he would ask the doctor. (P. Ex. 17:26-27). When Cadena returned to her cellblock, only the crutches were left with her. (P. Ex. 18:43, 27).

On June 25, 2014, at 1037 hours (10:37 a.m.), Cadena was examined by Corizon Physician Assistant Keith Barnes, who entered orders, including that she "may keep" the wheelchair. (P. Exs. 25A:77-78, 25B:Dep. Exs. 7:154, 8:22). Later that day, it was reported that Cadena fell. Cadena states that she was required to walk from her cell to the cellblock door with her crutches to retrieve her food tray. When she attempted to place her tray on the table, her drink spilled and she slipped and fell on her right leg. (P. Exs. 17:33-34, 164-69, 200-01, 18:43-48). The time Cadena fell is in dispute. (Doc. 1:10, Doc 62: 5).

After Cadena's fall, Nurse Fuentes examined Cadena, administered emergency care, made several calls to Dr. Salazar, and eventually sent her to UMC's emergency room. (P. Exs. 18:53-58; 25B:Dep. Exs. 9, 10). In his notes, Nurse Fuentes reported that Cadena had fallen, she had a pain level of 10+, a deformity distal from the knee, unable to move her toes with only partial movement of her big toe, unable to feel tactile stimulus to the outside aspect of her foot and palpation of the foot, and her vital signs. (P. Exs. 25A:79-81, 25B: Dep. Ex. 9).

Cadena arrived at UMC at 2045 hours (8:45 p.m.). (P. Ex. 11:1, 5). UMC records reflect her chief complaint was pain and swelling of her right lower extremity after a fall. *Id*. at 5. A pain scale of 10 was noted. *Id*. The emergency room physician noted "ortho recommends [follow up] with her ortho surgeon tomorrow. CAM boot and non weight bearing status" and "[r]ecommend [follow up with] original surgeon at Providence for further evaluation." (P. Ex. 11:4). Officer Gallardo and Cadena remember the doctors telling her that she needed surgery again, and that she would have to go back to Providence because UMC had no records for her. (P. Ex. 20:17-21). The doctors asked Officer Gallardo if they needed to have Cadena transferred to Providence or if she would take her there. (P. Ex. 18:63). Officer Gallardo responded that she would take Cadena to Providence. *Id*. Instead of following the recommendations from UMC, Officer Gallardo returned Cadena to EPCDF. (P. Ex. 20:21-22, 26).

Cadena returned to EPCDF at 0210 hours (2:10 a.m.). (P. Ex. 19: Dep Ex. 1:2). EPCDF's morning report notes that Cadena has returned from UMC and is pending a follow up appointment at Providence Hospital on June 26, 2014. *Id*. Dr. Salazar testified that he reviewed documents from the clinic and from UMC. (P. Ex. 25A:71, 81, 92-95, 114-20). Afterwards, Dr. Salazar issued an order which states "No meds ordered at this time" and "[follow up] with surgeon today." (P. Ex. 25A:99-101, 25B:Dep. Ex. 8). Dr. Salazar, in his deposition, said his order was that no new medicine be administered because the previous order for medication was still in effect. *Id*. Cadena disputes this interpretation of Dr. Salazar's orders due to Dr. Salazar's unclear handwriting. (P. Ex. 25A:99-101: Doc. 67:15-16). Cadena indicates that the order actually states "No meds ordered at floor time," and that order effectively denied Cadena any and all pain medication. (Doc. 67:16).

On June 26, 2014, Cadena was scheduled for an appointment at the Texas Tech Orthopedic Clinic on July 14, 2014. (P. Ex. 25A:113). Dr. Salazar testified that he was aware that he could have referred Cadena to any orthopedic surgeon and could have called other surgeons for an appointment, but that he saw no need to do so since she already had an appointment set up with Texas Tech. (P. Ex. 25A:112-13). On June 27, 2014, Dr. Salazar prescribed Norco to be given three times a day and proscribed additional medication. (P. Exs. 25A:122, 25B:Dep. Exs. 5, 8:22).

Cadena received wound care for her leg and the blister on her heel on June 27, 28, 29, and July 1, 4, 6, 9, 10, 11, 12, and 15, from nine or ten nurses who would have seen her leg and the alleged deformity. (P. Exs. 25A:137-38, 25B:Dep. Ex. 18). Cadena testified that her leg was twisted with the foot facing the middle of her body and that cell mates would ask why nothing had been done for her. (P. Ex. 18:93-94; 27). Her pain levels ranged from 3/10 to 10/10. (P. Exs. 25A:137-38, 25B:Dep. Ex. 18). Corizon's records indicate that Cadena refused medical care on July 8, 14, 16, 17, and 18, 2014, and refused medication several times as well. (D. Ex. 2:953, 955, 957, 959, 961, 972-73, 1012-13).

On July 14, 2014, Cadena was taken to the Texas Tech Orthopedics Clinic and an unspecified mechanical complication of the internal orthopedic device implant was assessed. (D. Ex. 4:4237). Cadena recalls the orthopedic doctor was surprised that she had not had the surgery and asked why they had waited so long. (P. Ex. 18:95-96). Dr. Abdelgawad's findings and recommendations, given to Corizon staff, sought preauthorization for a revision surgery scheduled for July 18, 2014. (P. Exs. 25A:142-143, 25B:Dep. Ex. 21). The Texas Tech Orthopedic clinic sent a fax marked "Urgent" to EPCDF clinic nurse indicating that surgery was

scheduled and authorization was needed as soon as possible; the fax included a description of the surgery and a cost estimate. (P. Exs. 25A:143-47, 25B:Dep. Ex. 22).

On July 14, 2014, Corizon RN Aguilar emailed for approval for Cadena's surgery, noting that the fracture was suffered prior to detention, to which Commander Vargas responded that he needed to check on the status of her charges since the injury occurred outside the facility. (D. Ex. 11:Dep. Ex. 8:2; P. Ex. 26:26, 35-36, Dep. Ex. 8). On July 16, 2014, Corizon's Health Service Administrator, Deborah Martinez, RN, sent an email to Commander Vargas reminding him of the upcoming appointment, to which he responded that the possibility of getting release was being investigated because her injury was a preexisting condition. (P. Ex. 26:Dep. Ex. 8). Less than an hour later, Executive Chief Deputy Sylvia Aguilar approved the surgery. (D. Ex. 11:Dep. Exs. 8:1, 14).

On July 17, 2014, at 1100 hours (11 a.m.), Corizon cancelled Cadena's preoperative appointment and surgery, noting that it needed to be rescheduled so she could attend a court setting. (P. Exs. 15, 25B:Dep. Ex. 14:9; D. Ex. 11:Dep. Ex. 14). Corizon's staff secured a new surgery date of July 22, 2014, with preoperative appointment on July 21, 2014. (P. Ex. 25B:Dep. Ex. 14).

On July 18, 2014, Cadena attended court, and she was released from EPCDF later that day. (P. Ex. 15). Cadena was taken to the WSAT, where Nurse Daphne Jones, R.N., an employee of the UMC onsite clinic, informed Cadena that the sheriff did not want to pay for the surgery and that she would have to make her own financial arrangements; a social worker helped Cadena get discounts from UMC and Texas Tech. (Doc. 1:23).

On July 21, 2014, Cadena attended her preoperative appointment, and on July 22, 2014, Dr. Abdelgawad, Texas Tech orthopedic surgeon, performed the surgery at UMC. (D. Ex.

3:7327; P. Ex. 25B:Dep. Ex. 14). Dr. Abdelgawad revised the Providence's earlier work on the broken leg, and was able to obtain 100% correction of the varus deformity. (P. Ex. 12; D. Ex. 3:7327). Cadena was released from UMC on July 28, 2014, with a wheelchair and instructions that she could resume activities as tolerated and be weight bearing as tolerated within 24 to 48 hours. (D. Ex. 3:7327, 7389).

Cadena argues that the fall at EPCDF caused her to have nerve damage in her leg. Specifically, Cadena contends she is unable to do things she used to do, including swimming, walking quickly, wearing high heels, and riding a bicycle. (P. Ex. 17:204-08). She has leg pain, numbness, disfigurement, and swelling in her ankle and foot. (P. Ex. 17:206-11).

## DISCUSSION

### I.     Summary Judgment Standard

Summary judgment is proper where the pleadings and evidence on file demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). A party seeking summary judgment bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the movant carries this burden, the burden shifts to the nonmovant to show the existence of a genuine issue for trial. *Id.* at 324–25. The nonmovant may not satisfy its burden with "some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). Nor does the mere existence of a factual dispute itself preclude the granting of summary judgment, *St. Amant v. Benoit*, 806 F.2d 1294, 1296 (5th Cir. 1987), the ultimate inquiry is whether the evidence is so "one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986).

In reviewing a motion for summary judgment, all justifiable inferences to be drawn from the underlying evidence must be viewed in the light most favorable to the party opposing the motion. *Aubrey v. School Bd. of Lafayette Parish*, 92 F.3d 316, 318 (5th Cir. 1996). "If the record, viewed in this light, could not lead a rational trier of fact to find for [the nonmoving party], there is no genuine issue for trial, and summary judgment is proper. If, on the other hand, the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Kelley v. Price-Macemon*, Inc., 992 F. 2d 1408, 1413 (5th Cir. 1993) (internal citations omitted).

## II.    Summary Judgment Evidence

The County objects to certain statements in Cadena's second declaration (P. Ex. 28) and certain statements within the declaration of Alberto Puebla. (P. Ex. 29). Parties may object to summary judgment evidence on the grounds that it cannot be presented in a form that would be admissible. FED. R. CIV. P. 56(c)(2). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." FED. R. CIV. P. 56(c)(2) 2010 amendment subdivision (c). A court may not consider hearsay evidence nor may it consider unauthenticated documents. *Johnson v. Spohn*, 334 F.App'x 673, 677–78 (5th Cir. 2 009); *Martin v. John W. Stone Oil Distrib. Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

### a.    Cadena's Second Declaration

In Cadena's response to the County's motion for summary judgment (Doc. 67), Cadena attaches a second declaration (P. Ex. 28). The County objects to the statements made by Cadena regarding her current incarceration as irrelevant. (Doc. 70:4). In paragraph 7 of Cadena's second declaration, Cadena states she is currently incarcerated, and she views her current incarceration as punishment.

Under Federal Rules of Evidence 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Cadena's current incarceration does not make any fact in her original complaint more or less probable, nor does it have any consequence in determining the current lawsuit against the County. The Court finds Cadena's current incarceration and her perception of being punished as irrelevant.

### b. Puebla's Declarations

The County makes several objections to Alberto Puebla's declaration (Doc. 70:4). First, Puebla's knowledge of lockdown procedure in October 2017 is irrelevant because the events in dispute occurred in 2014. *Id*. Second, the comments made by Chavez to Puebla are hearsay. *Id*. Finally, Puebla's own experiences occurred in 2017 and are irrelevent to the current lawsuit. *Id*.

The Court overrules the County's objections regarding Puebla's knowledge of lockdown procedures and Puebla's own experiences in EPCDF. Although Puebla's position as a trustee took place later than the period which Cadena was detained, his knowledge is relevant because it tends to show that nearly four years later, the alleged deficiencies still occur. *See Palo v. Dallas Cty*., No. 3:05-CV-0527-D, 2007 WL 2140590, at *8 (N.D. Tex. July, 26, 2007) (finding evidence produced years after the alleged misconduct relevant). Further, Puebla was an inmate at EPCDF in 2014. His personal experiences during that period may cast doubt upon evidence produced by the County.

The Court grants the County's objection regarding Chavez's statements to Puebla. Chavez's statements to Puebla are hearsay, and these statements do not fall within any hearsay exceptions. FED. R. EVID. 801, 803(4). Chavez's statements are excluded.

## III.     Americans with Disabilities Act ("ADA")

Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The language of Title II generally tracks the language of Section 504 of the Rehabilitation Act ("RA"); in fact, the statute specifically provides that "the remedies, procedures and rights" available under Section 504 shall be the same as those available under Title II. 42 U.S.C. § 12133; *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).

To establish a prima facie case of discrimination under both the ADA and the RA, a plaintiff must show "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). To have a qualifying disability, a plaintiff must demonstrate "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id*. at 499–500. This principle has been extended to ADA claims in the prison context. *McCoy v. Tex. Dep't of Criminal Justice*, No. C–05–370, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006). However, a prisoner does not have a right "to demand that the prison implement a specific type of service, program, or activity that is not already available or create a right for such inmate to be housed at a specific prison, where alternate services, programs or activities might be available." *Douglas v. Gusman*, 567 F.Supp.2d 877, 889 (E.D. La. 2008).

In the current case, Cadena claims that the County failed to provide reasonable accommodations or modifications and intentionally discriminated against her because of her disability in violation of the ADA.

### a. Failure to Provide Reasonable Accommodations or Modifications

Cadena claims the County failed to provide reasonable accommodations or modifications by not providing her with adequate medical care and interfering with her treatments. (Doc. 1). Specifically, the County did not provide adequate medical care when they assigned Nurse Portillo, to perform her initial assessment, the County took away her wheelchair and gave her crutches, and the County improperly delayed and interfered with her medical treatments. *Id.*

An accommodation or modification is considered reasonable if it is sufficient to provide a disabled person "meaningful access to the benefit" offered by a public entity. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985). A plaintiff can satisfy the second and third prongs of the prima facie case of disability discrimination by establishing that a public entity has failed to make reasonable accommodations for a disabled person. *Garrett v. Thaler*, 560 F.App'x 375, 382 (5th Cir. 2014).

A critical component of a Title II claim for failure to accommodate is proof that the disability and its consequential limitations were known. *Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F.App'x 214, 215 (5th Cir. 2015) (quoting *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)); *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). Otherwise it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances. *Taylor*, 93 F.3d at 164. Thus, the burden falls on the plaintiff "to specifically identify the disability and resulting limitations," *Id.* at 165, and to request an accommodation in

"direct and specific" terms, *Reed v. LePage Bakeries*, Inc., 244 F.3d 254, 261 (1st Cir. 2001). When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that "the disability, resulting limitation, and necessary reasonable accommodation" were "open, obvious, and apparent" to the entity's relevant agents. *Taylor*, 93 F.3d at 164.

In this case, it is not disputed that Cadena was disabled and her disability was open, obvious, and apparent. Cadena arrived in EPCDF only one day after having surgery on her leg. (Doc. 1). When she arrived, she was in a wheelchair and wearing a protective boot with bandages underneath. *Id*. While she was in EPCDF, she repeatedly asked for a wheelchair. *Id*. The issue turns on whether the County discriminated against Cadena by failing to provide Cadena with reasonable accommodations or modifications in light of her disability. The accommodation of Cadena's disability need not be ideal; instead, it need only be reasonable and effective. *See Wells v. Thaler*, 460 F.App'x 303, 313 (5th Cir. 2012) (holding that existing accommodations were more than sufficient to give Plaintiff access to the library).

### 1. Medical Decisions

Cadena's claims against the County regarding inadequate medical care and interference with her medical treatment cannot constitute a violation of the ADA. The ADA is not violated by "a prison's simply failing to attend to the medical needs of its disabled prisoners." *Nottingham v. Richardson*, 499 F.App'x 368, 377 (5th Cir. 2012) (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *See also Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) (indicating that the Rehabilitation Act is not intended to apply to medical treatment decisions); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (holding that medical decisions and medical negligence are not ordinarily within scope of ADA or RA). Absent circumstances showing an outright denial of all medical services, mere disagreements

with reasoned medical judgments do not state a violation of the ADA. *Patterson v. Kerr Cty.*, No. SA-05-CA-0626-RF, 2007 WL 2086671, at *7 (W.D. Tex. July, 18, 2007).

There is no evidence of outright denial of all medical treatment by the County, nor is there any indication that Cadena was treated differently because of her disability. Nurse Portillo, Dr. Salazar, and Nurse Fuentes provided reasonable medical services to Cadena, and their actions are not cognizable under the ADA. Once Cadena arrived in EPCDF, Nurse Portillo took her initial assessment and contacted Dr. Salazar for further instructions. (Doc. 1). Subsequently, Dr. Salazar ordered Norco two times a day for two weeks, follow-up with orthopedic in two weeks, crutches, a lower bunk, wound care, and Cadena to be housed in lockdown. (P. Ex. 25A:67-68). Dr. Salazar proscribed crutches to Cadena due to discharge instructions from Providence. (P. Ex. 1:2441). After falling in her jail cell, Nurse Fuentes provided emergency care to Cadena before sending her to the emergency room at UMC. (P. Ex. 18:53-58).

While it is in dispute whether or not Dr. Salazar improperly delayed Cadena's surgery, his decisions to delay the surgery and any other subsequent medical treatments were based on his own professional medical judgment. Thus, viewing the evidence most favorably to the Cadena, even if Nurse Portillo was not qualified to perform the initial assessment of Cadena or that Dr. Salazar was negligent in his treatment of Cadena, Cadena cannot recast her medical negligence claims as ADA violations. These claims are better left to state law. See *Patterson v. Kerr Cty.*, No. SA-05-CA-0626-RF, 2007 WL 2086671, at *7 (W.D. Tex. July, 18, 2007) (holding that negligence claims against medical professionals are state law concerns and are not violations of the ADA).

### 2. Food Delivery Policy

Cadena also contends that the County failed to provide reasonable accommodations or modifications by not altering its existing food delivery policy. (Doc. 1: 48). Cadena claims that

due to the County's failure, she fell in her jail cell and suffered injuries to her already surgically repaired leg. *Id*. Thus, the County's food delivery policy violated its affirmative duty and essentially denied Cadena meaningful access to her meals.

It is not in dispute that Cadena was disabled and her disability was clear and obvious. Similar to the discussion earlier, Cadena did not have a duty to trigger reasonable accommodations or modifications by requesting it. Even if Cadena had such a duty, Cadena satisfied the requirement by repeatedly asking for a wheelchair.

It is, however, in dispute what EPCDF's food delivery policy was. In its motion for summary judgment, the County indicated that the food tray was hand delivered to Cadena, and Officer Lopez assisted in feeding her. (Doc. 62:13). Further, it was the practice of EPCDF to go into the lockdown cellblocks and feed the inmates personally. (D. Ex. Q 7:23-8:1) On the other hand, in her own sworn declaration and in her deposition, Cadena indicated that the County required Cadena to walk from her cell to the cellblock door to retrieve her food and then return to her cell carrying both her food and her crutches. (Doc.1:28, Doc. 62:13, P. Exs. 17:33-34, 164-69, 200-01, 18:43-48, 28:1). When Cadena attempted to retrieve her food with her crutches, she slipped and fell on her right leg. (P. Ex. 28:1). Further, in the deposition of Commander Marco Vargas, Vargas did not know if there were any written policies for feeding disabled inmates. (P. Ex. 25:14).

Viewing the evidence in the light most favorably to Cadena, the Court finds that Cadena has presented a genuine issue of material fact concerning whether or not the County provided reasonable accommodations or modifications in its food delivery policy. Unlike the medical decisions discussed earlier, the food delivery policy is not a medical decision and cannot be protected under the ADA. According to Cadena's version of the events, EPCDF's food delivery

policy caused Cadena to fall in her jail cell, and she was subsequently denied benefits entitled to other nondisabled inmates. Whether or not EPCDF directly delivered food to Cadena is a fact issue for the jury to decide. Summary judgment on this claim is denied.

### b. Intentional Discrimination

Cadena argues that the actions of Dr. Salazar and other County employees[3] constitute intentional discrimination because they were deliberately indifferent in failing to provide reasonable accommodations or modifications. (Doc. 67: 6-16). In turn, the County contends that Cadena cannot demonstrate intentional discrimination because the actions of Dr. Salazar and other employees are medical decisions that are not cognizable under the ADA, and Cadena cannot show any discriminatory animus. *Id*. at 9-11. For Cadena to recover compensatory damages, she must prove that the discrimination was intentional. *Wells v. Thaler*, 460 F. App'x 303, 311–12 (5th Cir. 2012) (citing *Delano-Pyle v. Victoria Cnty*., 302 F.3d 567, 574 (5th Cir. 2002)).

What constitutes intentional discrimination is undecided in the Fifth Circuit. *In Perez v. Doctors Hosp. at Renaissance*, *Ltd.,* the Fifth Circuit refused to clarify the meaning of intent under *Delano-Pyle*. 624 F.App'x 180, 184 (5th Cir. 2015); *See McCollum v. Livingston*, no. 14-3253, 2017 WL 2215627, at *2 (S.D. Tex. May 19, 2017).

Other Circuits have used two approaches to define intentional discrimination. First, a strict standard which requires the findings of discriminatory animus that shows prejudice, spite, or ill will. *Liese v. Indian River Cty. Hosp. Dist*., 701 F.3d 334, 344 (11th Cir. 2012). Second, under the "deliberate indifference" standard, the defendant knew that harm was substantially

---

[3] The Court considered the County's arguments against vicarious liability. (Doc. 70:7).The Court would rather address the issue on the merits.

likely and failed to act on that likelihood. *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla*., 610 F.3d 588, 604 (11th Cir. 2010). Whatever the standard might be, Cadena has not met it.

In determining whether or not Cadena has satisfied the strict standard for intentional discrimination, the Court agrees with the County that there is no evidence that demonstrates prejudice, ill will, or malice, nor does Cadena present any affirmative evidence that shows discriminatory animus towards her. Viewing the evidence in the light most favorably to Cadena, she does not satisfy the strict standard.

Cadena has also not met the deliberate indifference standard. As discussed above, to meet the deliberate indifference standard, Cadena must present evidence that show: (1) knowledge that a federally protected right is substantially likely to be violated; and (2) failure to act despite that knowledge. *S.H. ex rel. Durrell v. Lower Merion Sch. Dist*., 729 F.3d 248, 264 (3rd Cir. 2013). Similar to Cadena's earlier claim for failure to provide reasonable accommodations or modifications, the first element of deliberate indifference requires the plaintiff to notify the defendant of his or her disability. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). The failure to notify requirement is waived if the disability is obvious. *Id*. In order to meet the second element, "a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id*.

In this case, the first element is satisfied. Cadena came to EPCDF one day after surgery. She was in a wheelchair and wore a protective boot with bandages underneath. Cadena's disability was clear and obvious.

Medical decisions made by Dr. Salazar, Nurse Portillo, and Nurse Frank do not satisfy the second element. Dr. Salazar, Nurse Portillo, and Nurse Frank provided adequate medical care to Cadena, and they did not act with deliberate indifference. The evidence does not show any

deliberateness in their actions. While their actions may qualify as negligent, mere negligence is insufficient. *Duvall,* 260 F.3d at 1139. Further, the decisions of Dr. Salazar, Nurse Portillo, and Nurse Frank to give Cadena crutches, to delay her medical treatment and surgery, and to keep her sedated in her cell are not cognizable under the ADA. Similar to the earlier discussion under Failure to Provide Reasonable Accommodations or Modifications section, medical decisions do not constitute violations of the ADA. *Nottingham v. Richardson*, 499 F.App'x 368, 377 (5th Cir. 2012) (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)).

EPCDF's food delivery policy also does not satisfy the requirement of the second element. While it is in dispute what the food delivery policy was at EPCDF, the evidence does not show deliberateness. Dr. Salazar ordered Cadena crutches for her disability due to medical instructions from Providence, and Officer Davila did not require Cadena to pick up her food using her crutches or take away her wheelchair in order to intentionally discriminate against her based on her disability. While the County and Officer Davila's conduct may be negligent, mere negligence is insufficient to satisfy this element. *Duvall,* 260 F.3d at 1139; *Patterson v. Kerr Cty.*, No. SA-05-CA-0626-RF, 2007 WL 2086671, at *7 (W.D. Tex. July, 18, 2007); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005).

Finally, the County's failure to comply with its affirmative obligation to provide reasonable accommodations or modifications, by itself, cannot be found as intentional discrimination. *Falls v. Bd. of Comm'r of the New Orleans Reg'l Transit Auth., et al.*, NO: 16-2499, 2017 WL 2730781, at *5 (E.D. La. June 26, 2017). Cadena cites *Bennet-Nelson v. Louisiana Bd. of Regents,* 431 F.3d 448 (5th Cir. 2005), and argues that "[w]hen a defendant fails to meet its affirmative obligation to make reasonable accommodations, the cause of the failure is irrelevant." (Doc. 67:6). The Fifth Circuit has limited the holding of *Bennet-Nelson* to

an interpretation that solely concerns the Eleventh Amendment. *Estate of A.R. v. Myzyka*, 543 F.App'x 363, 365 n.2 (5th Cir. Oct. 16, 2013). Further, the holding of *Perez* contradicts Cadena's claim. Under *Perez*, the standards for intentional discrimination are not established. *Perez v. Doctors Hosp. at Renaissance*, *Ltd.,* 624 F.App'x 180, 184 (5th Cir. 2015).

## IV.     Civil Rights Claims - § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). This is because "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

As a pre-trial detainee, Cadena's constitutional claims for deliberate indifference to her serious medical needs arise under the Fourteenth Amendment. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998). The applicable standard is the same, however, as it would be had it arisen under the Eighth Amendment. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) ("This Court has recognized that there is no significant distinction between pretrial detainees and convicted inmates concerning . . . medical care.").

The County cannot be found liable on a theory of *respondeat superior* merely because it employs a tortfeasor. *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997). It may, however, be liable under § 1983 for constitutional harm caused by the execution or implementation of an official policy, ordinance, regulation, decision officially adopted and promulgated by that body's policymakers, or a persistent, widespread practice of officials or employees, about which a policymaker has actual or constructive knowledge, and which is so common and well settled as

to constitute a custom that fairly represents municipal policy. *Monell v. Dept. of Soc. Svs. of the City of New York*, 436 U.S. 658, 690–91, 694 (1978). Allegations of isolated incidents are generally insufficient to establish a custom or practice except where the decision maker possesses final authority to establish municipal policy with respect to the action ordered. *Freeman v. Town of Hudson*, 714 F.3d 29, 37–38 (1st Cir. 2013) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–484 (1986)).

In addition to establishing the existence of a relevant policy or custom, Cadena must establish that such policy or custom was the moving force behind the constitutional injury, which requires "a direct causal connection" between the policy and the deprivation, "more than a mere 'but for' coupling." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992). The very terms of such statute or policy, or the alleged custom, must be a proximate cause of the constitutional violation. *See Rheuark v. Shaw*, 628 F.2d 297, 305 (5th Cir. 1980).

### a. Classification of Cadena's Claims

Constitutional challenges by pretrial detainees fall under two theories: "condition of confinement" or "episodic act or omission." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644–45 (5th Cir. 1996) (en banc). Under the condition of confinement theory, the "plaintiff is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish because intent may be inferred from the decision to expose a detainee to an unconstitutional condition." *Shepard v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009). A condition is usually the result of an explicit policy or restriction *e.g.*, the number of bunks per

cell, overcrowding, and telephone. *Scott v. Moore*, 114 F.3d 51, 53 n. 2 (5th Cir. 1997) (en banc).[4]

In some cases, a condition may reflect an unstated or de facto policy, as evidenced by a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Hare*, 74 F.3d at 645. Proving a pattern is a heavy burden, one that has rarely been met. *Shepard v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009). Further, to constitute impermissible punishment, the condition must be one that is "arbitrary or purposeless" or, put differently, "not reasonably related to a legitimate goal." *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

In contrast, if the alleged harm is a particular act or omission by one or more officials, the action is an episodic act or omission case. *Hare*, 74 F.3d at 645. In an episodic act or omission case, an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act or omission by the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission. *Scott*, 115 F.3d at 54. Because the focus of the claim is one individual's misconduct, the detainee is required to prove intent—one or more jail officials acted or failed to act with deliberate indifference to the detainee's needs. *Hare*, 74 F.3d at 648. Generally, "a pretrial detainee's claim of failure to provide medical care or protection from violence does not

---

[4] Under *Scott v. Moore*, the following were deemed to be conditions of confinement cases: *Murphy v. Walker*, 51 F.3d 714 (7th Cir. 1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons*, 51 F.3d 315 (1st Cir. 1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan*, 4 F.3d 1038 (2d Cir. 1993) (length of pre-trial detention); *Hause v. Vaught*, 993 F.2d 1079 (4th Cir. 1993) (restriction on mail privileges); *Brogsdale v. Barry*, 926 F.2d 1184 (D.C. Cir. 1991) (overcrowding); *Lyons v. Powell*, 838 F.2d 28 (1st Cir. 1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins*, 711 F.2d 31 (4th Cir. 1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson*, 651 F.2d 96 (2d Cir. 1981) (overcrowding).

challenge a condition, practice, rule, or restriction, but rather attacks the episodic acts or omissions of a state jail official, the question is whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Id*. at 645. Even If an employee or agent of the municipality is found to be deliberately indifferent, the Court must then determine whether the city may be held accountable for that violation. *Scott*, 114 F.3d at 54. In determining whether a case falls under a theory of episodic act or omissions or conditions of confinement, the court must determine the actual harms alleged first. *Id*. at 53.

In this case, because another actor is interposed between Cadena and the County, Cadena's claims, properly characterized, fault specific jail officials for their acts or omissions. Cadena complains first of a particular act or omission by an actor and then points derivatively to a policy, custom, or rule of the County that may have caused the harm. Thus, the Court will determine if the individual acted with deliberate indifference before determining if the County may be held liable.

### b. Deliberate Indifference Standard

To demonstrate deliberate indifference, a prisoner must show that: "1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm to occur." *Thompson v. Upshur County*, Tx., 245 F.3d 447, 458–59 (5th Cir. 2001). Liability does not attach if the defendant merely should have known about a risk but did not. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528 (5th Cir. 1999). Cadena must establish actual knowledge. *Shepard v. Hansford Cty*., 110 F. Supp.3d 696, 709 (N.D. Tex. 2016).

"[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. Complaints of negligence, neglect, or even medical malpractice do not give rise to constitutional claims. *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Nor can liability be premised on a mere disagreement with the medical care received. *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Gibbs*, 254 F.3d at 550. Rather, Plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Thus, "[a]s long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights." *Wilkins v. Cty. of San Patricio*, No. C-04-432, 2005 WL 2921648 at *6 (S.D. Tex. Nov. 4, 2005) (citing *Youngberg v. Romeo*, 457 U.S. 307, 322–23 (1982)). Additionally, the mere existence of continuing pain does not, in and of itself, demonstrate deliberate indifference. *Ruiz v. Mercado*, No. M-14-921, 2016 WL 1166040 at *8 (S.D. Tex. 2016) (citing *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992) (complaints of pain and discomfort from alleged inattention and misdiagnosis of injury failed to establish deliberate indifference)). Thus, deliberate indifference, especially in a medical context, is an extremely difficult standard to meet. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

### c. LVNs

Cadena contends that the County was deliberately indifferent and did not have a legitimate government interest by assigning LVNs to perform intakes. First, Cadena's claim against the County must be categorized as an episodic act or omission case. The actual harm in this case is not the County's policy of assigning LVNs to perform intakes at EPCDF, but the

actions of Nurse Portillo examining Cadena and taking away her wheelchair. Cadena does not connect the actions of Nurse Portillo to her status as a LVN. *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc) ("Although, in her amended state petition, Scott complains generally of inadequate staffing, i.e., 'by having only one individual on duty, and/or by not having a female member present when female prisoners are confined,' the actual *harm* of which she complains is the sexual assaults committed by Moore during the one eight-hour shift-an episodic event perpetrated by an actor interposed between Scott and the city, but allegedly caused or permitted by the aforesaid general conditions.").

Nurse Portillo did not act with deliberate indifference. Cadena cannot establish that the Nurse Portillo actually knew of and disregarded an excessive risk to her health. Cadena must show actual knowledge. *Shepard v. Hansford Cty.*, 110 F. Supp.3d 696, 709 (N.D. Tex. 2016). Further, Nurse Portillo's initial assessment of Cadena qualifies as medical judgment. "Medical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Constitution's] purview. Such matters are questions of tort, not constitutional law." *Snipes v. Detella*, 95 F.3d 586, 590–91 (7th Cir. 1996) (quoting *Estelle* v. *Gamble*, 429 U.S. 97, 107 (1976)). Without wanton disregard to Cadena's medical needs, Nurse Portillo did not act with deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Thus, even assuming that Nurse Portillo was not qualified to perform intakes, Cadena still fails to satisfy the deliberate indifference standard, because Nurse Portillo's acts of medical negligence are insufficient. *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

In support of her argument, Cadena offers Dr. Salazar's deposition to support her assertion that LVNs are not qualified to perform assessments, but the County still assigned

LVNS to perform such duties, knowing that it posed a serious risk of harm. (P. Ex. 25A: 63–64). During Dr. Salazar's deposition, he indicated that LVNs are not qualified to provide assessments, but Dr. Salazar referenced the nursing board as the ultimate authority regarding any job limitations. *Id*. Cadena has not offered into evidence the standards as set forth by the nursing board, nor has she offered any other evidence to support her claim that LVNs are not qualified to perform the inmate assessment outside of Dr. Salazar's statements. In contrast, the County offers the expert report of Dr. Robert Jones to establish that, under the Texas Nurse Practice Act, there was nothing to prohibit the LVNs to perform the intake, and that they are qualified to provide the care rendered to Cadena. (D. Ex. G: 8822). Viewing the evidence in the light most favorable to Cadena, Cadena's evidence is insufficient for a rational fact finder to conclude that the County was deliberately indifferent.

### d. Medical Decisions by Dr. Salazar

Cadena further contends that the County was deliberately indifferent and did not have a legitimate government interest by leaving medical decisions to Dr. Salazar. Similar to the discussion above, Cadena's claim against the County must be recast as a case that falls under the theory of episodic act or omission. The actual harms alleged are: (1) Dr. Salazar's decision to take away Cadena's wheelchair; (2) Dr. Salazar denying Cadena pain medication; and (3) Dr. Salazar's interference with Cadena's medical treatment. Dr. Salazar and his actions are interposed between Cadena and the County. Even if Dr. Salazar was found to be deliberately indifferent, his decision must be then be attached to an official policy or custom of the County.

Cadena alleges that Dr. Salazar took away her wheelchair knowing that it posed a substantial risk of serious harm and interfered with her doctor's instructions. (Docs. 1:33). Cadena's discharge instructions from Providence stated that she should "use crutches as

directed." (P. Ex. 1:2441). The same instructions also state "Discharge Activity: Progressive Ambulation, Up with assistive device." (P. Ex. 1:2428). Based on these instructions, Dr. Salazar proscribed Cadena with crutches. Viewing the evidence in the light most favorable to Cadena, Dr. Salazar's action do not satisfy the deliberate indifference standard. Dr. Salazar was not aware of a risk for serious harm, did not take away Cadena's wheelchair with any intent to harm, and did not interfere with Cadena's treatment by taking away the wheelchair. While the doctor from Providence did provide Cadena with only a wheelchair, the instructions provided by Cadena's doctor is clear. Even if it should have been clear that Cadena could only use a wheelchair, medical malpractice does not give rise to constitutional claims. *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979). Instead, Cadena must show that Dr. Salazar intentionally mistreated her or mistreated her with wanton disregard, and she has failed to do so. Merely should have known is insufficient under the deliberate indifference standard. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528 (5th Cir. 1999). Cadena must show Dr. Salazar had actual knowledge. *Shepard v. Hansford Cty.*, 110 F. Supp.3d 696, 709 (N.D. Tex. 2016).

Further, a prisoner's disagreement with the doctor's medical decisions, absent exceptional circumstances, does not constitute deliberate indifference. *See Gobert*, 463 F.3d at 346. Likewise, the denial of a physician or treatment of the inmate's choice is insufficient as a matter of law to support a deliberate indifference claim. *See Hunt v. Barry Telford Unit*, No. 5:15cv152, 2017 WL 1100721, at *4–5 (E.D. Tex. Mar. 24, 2017) (failure to summon inmate's preferred specialist and to perform inmate's preferred test and procedures do not amount to cruel and unusual punishment). Thus, Cadena's disagreement with Dr. Salazar's choice of providing her with crutches is insufficient to satisfy the deliberate indifference standard.

Cadena claims Dr. Salazar acted with deliberate indifference by delaying or denying her pain medication after her fall on June 25, 2014. After Cadena had fallen in her jail cell, Nurse Fuentes provided her with emergency care, evaluated the injury, and made several calls to Dr. Salazar. (P. Ex. 18:53-58). After some time, Cadena was transported to UMC. (P. Ex. 18:59). When Cadena returned from UMC, Dr. Salazar issued an order that stated "No meds ordered at this time" (P. Ex. 25B). Dr. Salazar testified that the order was for no new medicine to be administered, and this order did not revoke the previous order for Norco. (P. Ex. 25A:100-101). Cadena disputes this interpretation of Dr. Salazar's order with nothing but her own logic and Dr. Salazar's unclear handwriting. Even if the order stated "No meds at floor time," Cadena has failed to produce evidence that shows the change from "this time" to "floor time" effectively revoked all pain medication given to her. In Cadena's own deposition, Cadena admits that she continued to receive Norco after her fall on June 25, and she may have also received Colace and Dulcolax. (P. Ex. 17:56-58). Further, on June 27, 2014, Dr. Salazar ordered an increase in the amount of Norco given to Cadena. (P. Exs. 25A:122, 25B: Dep. Exs. 7:159, 8:22).

Viewing the evidence in the light most favorable to Cadena, Cadena has not offered evidence from which a reasonable trier of fact could infer that Dr. Salazar was aware that serious harm could occur if he did not give Cadena any additional pain medication, nor could a reasonable trier of fact find that Dr. Salazar intentionally denied Cadena new pain medication intending for harm to occur. In fact, Dr. Salazar did not deny Cadena any pain medication and actually increased the amount pain medication given to her. Further, as discussed previously, the mere existence of continuing pain does not, in and of itself, demonstrate deliberate indifference. *Ruiz v. Mercado*, No. M-14-921, 2016 WL 1166040 at *8 (S.D. Tex. 2016) (citing *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). Even assuming Dr. Salazar should have proscribed

Cadena more medication, Dr. Salazar cannot be found liable by merely exercising his professional judgment. Cadena's disagreement with Dr. Salazar's medical decision does not amount to deliberate indifference unless Cadena shows it was made with wanton disregard.

Cadena also claims that the County was deliberately indifferent and did not have a legitimate government interest by failing to provide her with prompt, adequate medical care. (Doc. 1:35). In Cadena's response to the County's motion for summary judgment (Doc. 67:21-22) and in her complaint (Doc. 1:35), Cadena claims that Dr. Salazar knew that she had a serious need for surgery, but Dr. Salazar denied and delayed scheduling her follow-up appointment and surgery, knowing that it posed a substantial risk of serious harm.

Dr. Salazar did not act with deliberate indifference in delaying Cadena's follow-up appointment and surgery. In order to establish a constitutional claim for medical delay, Cadena must show that Dr. Salazar acted with deliberate indifference and substantial harmed occurred as a result. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Cadena fails to do so.

Cadena fell in her jail cell on June 25, 2014, and was taken to the emergency room at UMC. On July 14, 2014, Cadena was taken to the Texas Tech Orthopedics Clinic for further evaluations by Dr. Abdelgawad. (D. Ex. 4:4232). Afterwards, a revision surgery was scheduled for July 18, 2014. (P. Ex. 25A:144). On July 17, 2014, Dr. Salazar rescheduled Cadena's surgery so she could attend a court setting. (P. Ex. 15). Cadena's surgery finally occurred on July 22, 2014. (P. Ex. 3:7327). Although Dr. Salazar did not follow UMC discharge recommendation of following up the next day, Dr. Salazar considered such recommendation and exercised his own professional medical judgment in determining to accept an appointment with Dr. Abdelgawad for July 14, and to later delay the scheduled surgery until July 22. *See Fuller v. Harris County Sheriff Dept.*, 2007 WL 1672100 at *4 (S.D. Tex. June 8, 2007) ("a medical care provider's

failure or refusal to follow another medical care provider's treatment recommendations does not, standing alone, constitute an Eighth Amendment violation.").

Viewing the evidence in the light most favorable to Cadena, no reasonable trier of fact could infer that Dr. Salazar acted with deliberate indifference, nor could a reasonable trier of fact find that Dr. Salazar acted pursuant to County policy. Dr. Salazar and the County were attentive to Cadena's medical needs. Cadena was provided emergency care, pain medication, and wound care. Cadena was proscribed a lower bunk bed and was isolated from the general population for her own safety. Further, Dr. Salazar made the decision to delay Cadena's appointment and surgery according to his own professional medical judgment, and Cadena's disagreement with Dr. Salazar's decisions is insufficient for a constitutional claim. *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999). In order to prevail, Cadena must show Dr. Salazar engaged in a wanton disregard for her medical needs, and she has failed to do so. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Finally, Cadena contends that the County was deliberately indifferent to her serious medical needs by delaying her follow-up appointment and surgery based on the consideration of non-medical factors, such as preferred providers, cost, and anticipated release. First, Dr. Salazar did not act with deliberate indifference, and he gave Cadena adequate medical care. Cadena was given wound care for her broken leg, she was sent to the emergency room after her fall, she was given pain medication, and her surgery was approved. Cadena does not get to pick and choose her medical services. Cadena's disagreement with the Dr. Salazar's medical decisions, absent exceptional circumstances, does not constitute deliberate indifference. *See Gobert*, 463 F.3d at 346. Further, even if Dr. Salazar was deliberately indifferent, Cadena has failed to provide evidence that links the actions of Dr. Salazar pursuant to County policy.

### e. Food Delivery Policy

Cadena alleges that the County, through Dr. Salazar and Corizon staff, knew that she could not use crutches. (Doc. 1:33). Despite such knowledge, the County and Dr. Salazar failed to advise the jail staff to move her to another cellblock where she could eat in a dayroom, and did so with deliberate indifference, resulting in her falling and suffering severe pain and injury. *Id.*

Cadena produced evidence that indicated Corizon staff were aware of her difficulty using crutches. Cadena's evidence also shows that after her visit to the medical clinic on June 25th, and before she fell in her cell, an order was entered that she "May keep wheelchair." (P. Exs. 25A:77; 25B:Dep. Ex. 8: 22). Pursuant to that order, instructions were given to the detention officers that read: "Doctor recommends that inmate keep wheelchair and is placed on a lower bunk." (P. Exs.25A:77-78, 25B:). According to Cadena, however, she did not have her wheelchair when she fell in her cell.

Viewing the evidence in the light most favorable to Cadena, Cadena's evidence is insufficient to support a finding of deliberate indifference. Cadena does not produce any evidence that Officer Davila required her to pick up her food with her crutches in order to intentionally harm her. While Officer Davila's conduct may be negligent, mere negligence is insufficient to satisfy this element. In order for Cadena to prevail on this issue, she must show that Officer Davila had actual knowledge. *Shepard v. Hansford Cty.*, 110 F. Supp.3d 696, 709 (N.D. Tex. 2016). Liability does not attach if the defendant merely should have known about a risk but did not. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528 (5th Cir. 1999). Because Officer Davila did not act with deliberate indifference, it is irrelevant to find if his actions were pursuant to County policy.

### f.   Failure to Train

In Cadena's complaint, she argues that the County failed to train its staff regarding the needs of mobility-disabled prisoners who use mobility aids and failed to train its staff to keep accurate records of mobility and special accessibility considerations for each prisoner booked into EPCDF. (Doc. 1: 36). The County, in its motion for summary judgment, claims there was no link between its policies and the violation of Cadena's rights, nor do the actions of the County and its staff amount to deliberate indifference. (Doc. 62:17). Cadena does not respond to the County's argument. (Doc. 67).

"In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton v. Harris*, 489 U.S. at 390, 109 S.Ct. 1197. A plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a "moving force" in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy. *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010). It is not enough to show "that an otherwise sound program has occasionally been negligently administered" or to prove that an injury "could have been avoided if an [employee] had had better or more training." *Harris*, 489 U.S. at 391.

Cadena has not offered evidence regarding what training was inadequate, she has not offered evidence that shows a pattern of constitutional violations similar to her alleged violation, and she has not offered evidence that the County had notice of such pattern. While one jail staff member may be negligent in his or her duties, there is no evidence that connects this negligent behavior to the County, nor is there evidence that these alleged incidents were not isolated occurrences. Cadena cannot show that the County's training policy, or the lack of one, was the moving force behind her claims. Viewing the evidence in the light most favorable to Cadena, the

Court does not find any evidence that indicate the County was deliberately indifferent in failing to train its staff. The County is entitled to summary judgment on these claims.

### g. First Amendment

In Cadena's complaint, she alleges that the County violated her First Amendment rights by not mailing her letter to the Inspector General and by denying her a handbook on jail grievance procedures. (Doc. 1: 37). The County argues that Cadena fails to show a County policy or regulation that is the moving force behind an employee's alleged failure to send her letter, and Cadena does not have a constitutional right to a handbook. (Doc. 62: 18-19). Cadena does not respond to County's argument. (Doc. 67).

"A prison inmate is entitled to [her] First Amendment right to freedom of expression so long as it is not inconsistent with [her] status as a prisoner and does not adversely affect a legitimate state interest." *Jackson v. Cain,* 864 F.2d 1235, 1248 (5th Cir. 1989). Thus, such rights may be limited for valid penological objectives, "including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Further, "before a prisoner may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate 'that his position as a litigant was prejudiced by his denial of access to the courts.'" *McDonald v. Steward*, 132 F.3d 225, 230–31 (5th Cir. 1998) (citation omitted). Finally, a delay in a prisoner's mail may be actionable under § 1983 if the delay was intentional and the delay prejudiced the prisoner legally. *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). An isolated incident without any harm does not give rise to a constitutional violation. *Id*. Cadena's mail to the Inspector General regarding her grievances against EPCDF should be categorized as legal mail. *See Berenguel v. Bell*, 283 F. App'x 293, 296 (5th Cir. 2008) (indicating that letters to prison grievance officials should be categorized as legal mail).

Cadena's position as a litigant was not prejudiced. Not mailing her letter has not damaged her lawsuit in any shape or form. Further, Cadena has not shown that the action of a single employee was intentional, has not shown that an official policy caused the alleged violation, and has not produced any evidence that the alleged violation was widespread. The failure to mail her letter to the Inspector General was an isolated incident that did not harm Cadena in any way.

Cadena's constitutional rights were not violated when EPCDF failed to give her a personal grievance handbook. The majority of case law, regarding failure to give out handbooks, illustrates prisoners' failure to exhaust their administrative remedies because they were not given a handbook. See *e.g.*, *Legget v. Lafayette*, 608 F.App'x 187, 191 (5th Cir. 2015); *Davis v. Fernandez* 798 F.3d 290, 295 (5th Cir. 2015). The case law in those situations determines whether or not an inmate had a fair opportunity—if the inmate was not given a handbook—to discover what the jail's grievance procedures were. *Davis*, 798 F.3d at 295–96. If an inmate had a fair opportunity despite not receiving an handbook, his § 1983 claims are barred by his failure to exhaust his administrative remedies. *Id*. If an inmate did not have a fair opportunity, that inmate was not required to exhaust his administrative remedies. *Id*. at 296. Cadena suffered no harm here because she had access to a law library and some form of a handbook from that library. (D. Ex. C:107). This handbook, at the very least, provided her with the information to send her letter to the Inspector General. *Id*. Even if Cadena did not have access to a handbook or if the law library was insufficient, her § 1983 claim is still unaffected. Further, simply not giving her a handbook, by itself, is not a valid constitutional claim. Standing alone, there is no inherent constitutional right to effective grievance procedures. *See Labit v. Landry*, No. 6:11–cv–0574, 2012 WL 1458108 *9 (W.D. La. Mar. 27, 2012). "A prison official's failure to comply with a state administrative grievance procedure is not actionable under § 1983 because a state

administrative grievance procedure does not confer any substantive constitutional right upon prison inmate." *Brown v. LeBlanc*, No. 09–1477–P, 2013 WL 1947180 * 5 (W.D. La. Mar. 27, 2013). Finally, this Court agrees with the County that even if Cadena had a constitutional right for a handbook, Cadena cannot show that any County policy was the moving force behind the alleged failure to provide Cadena with a handbook.

## V.     Punitive Damages

In Cadena's complaint and in her response to County's motion for summary judgment, Cadena argues she is entitled to economic damages, noneconomic damages, attorney's fees, costs, and punitive damages. (Doc. 1: 38, Doc. 67:27). As a matter of Law, punitive damages are not recoverable under the under § 202 of the ADA and § 504 of the RA. *Barnes v. Gorman*, 536 U.S. 181, 190 (2002); *Edler v. Hockley Cty. Com'rs Court*, 589 F.App'x 664, 671 (5th Cir. 2014). Similarly, Cadena's punitive damage claim based upon § 1983 must also be denied. *See, e.g., City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 271 (1981). Therefore, the claims for punitive damages asserted by Cadena are dismissed.

## VI.    Causation

In its motion for summary judgment, the County presents evidence that Cadena's fall in EPCDF did not cause Cadena's injuries. (Doc. 62: 2). The County points to the opinion of two experts, Dr. Small and Dr. Jones, who both indicated that the treatment provided to Cadena for her first surgery—outside of EPCDF—caused the necessity for the second surgery. (D. Ex. G; 8821, 8836). Because Cadena failed to show intentional discrimination under the ADA and because the Court granted the County's motion for summary judgment on Cadena's 1983 claims, the County's causation claim is moot.

**CONCLUSION**

For all the foregoing reasons, it is the **RECOMMENDATION** of this Court that the County's

motion for summary judgment (Doc. 62) be **GRANTED** in part and **DENIED** in part.


**SIGNED** this 12th day of February, 2018.

_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN 14 (FOURTEEN) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT, SHALL BAR YOU, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.   FED. R. CIV. P. 72 (EFFECTIVE DEC. 1, 2009).